**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:15-CV-00085-HBB**

**MARION BOURLAND**                                                                      **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                              **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>
<u>**AND ORDER**</u>

<u>BACKGROUND</u>

Before the Court is the complaint (DN 1) of Marion Bourland ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 13) and Defendant (DN 16) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11).  By Order entered December 9, 2015 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

FINDINGS OF FACT

On November 2, 2011, Plaintiff protectively filed an application for Disability Insurance benefits (Tr. 19, 162-68).   Plaintiff alleged that she became disabled on August 2, 2011, as a result of neuropathy, hypothyroidism, fibromyalgia-fibrocystic, depression, anemia, Gray's disease, asthma, and severe pain (Tr. 162, 202).   Administrative Law Judge Marci P. Eaton ("ALJ") conducted a video hearing from Paducah, Kentucky, on November 6, 2013 (Tr. 19, 37-39). Plaintiff and her attorney, Leigh Doyal, participated in the hearing from Madisonville, Kentucky (DN 19, 37-39).   Stephanie Barnes also appeared and testified as an impartial vocational expert (DN 19, 37-39).

In a decision dated January 27, 2014, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 19-32). First, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 2, 2011, the alleged onset date (Tr. 21).   Next, the ALJ determined that Plaintiff's hypothyroidism, fibromyalgia, peripheral neuropathy, and depression are "severe" impairments within the meaning of the regulations (Tr. 21).   Third, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 22).

Fourth, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of light work because she can only occasionally climb ladders, ropes, and scaffolds; can frequently climb ramps and stairs; can frequently stoop, kneel, crouch, and crawl; needs to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; can understand, remember, and carry out one to three step tasks; can carry out a work assignment sufficiently across a routine work schedule; can tolerate occasional interactions with co-workers, supervisors,

2

and the general public; needs to avoid work environments that are fast paced, noisy, and distracting; and can respond appropriately to a work setting and to changes within the above limitations (Tr. 23).   Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work (Tr. 31).

Fifth, the ALJ considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 31-32).   The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 31-32).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 2, 2011, through January 27, 2014, the date of the decision (Tr. 32).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 14-15).   The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a

3

case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

4

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)      Is the claimant engaged in substantial gainful activity?

2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)      Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

The Residual Functional Capacity Assessment

Plaintiff disagrees with Finding No. 5 which sets forth the ALJ's assessment of her residual functional capacity (DN 13-1 at 1).   The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946.   The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his physical and mental impairments.   20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p.   Thus, in making the residual

5

functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings.   20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

Plaintiff has set forth six reasons why she disagrees with the ALJ's residual functional capacity determination (DN 13).   The first three reasons focus on the ALJ's assignment of weight to medical source statements in the record.   The fourth concerns the ALJ's consideration of the combined effect of Plaintiff's impairments.   The fifth asserts the ALJ speculated about the medical evidence.   The final reason addresses the ALJ's assessment of Plaintiff's credibility.

The ALJ's Assignment of Weight to Medical Opinions

In this section, the undersigned will address Plaintiff's first three reasons for disagreeing with the ALJ's residual functional capacity assessment.   All three challenge the ALJ's assignment of weight to a medical source statement in the record (DN 13-1 at 2-6).   More specifically, Plaintiff is arguing there was not substantial evidence to support the ALJ's (1) failure to give "controlling" or "great" weight to the opinion of Dr. Bernard Buchanan, her treating physician whose specialty is endocrinology; (2) failure to give "controlling" or "great" weight to the opinions of Dr. Steven Fractman, a consultative examiner; and (3) decision to adopt the postural and environmental limitations expressed by the non-examining state agency physician, Dr. P. Saranga (DN 13-1 at 2-6).

The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is

6

afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

<u>Gayheart v. Comm'r of Soc. Sec.</u>, 710 F.3d 365, 375-76 (6th Cir. 2013).

7

1

The undersigned will now address Plaintiff's claim there was not substantial evidence to support the ALJ's failure to give "controlling" and/or "great" weight to the opinions that her treating physician, Dr. Buchanan, provided in a sworn statement dated March 6, 2013 (DN 13-1 at 2-4, citing Tr. 339-344). According to Plaintiff, the ALJ found Dr. Buchanan's opinion could not be afforded great or controlling weight because it was "vague" (DN 13-1 at 3, citing Tr. 30). Plaintiff also asserts the ALJ afforded little to no weight to Dr. Buchanan's statement that she could not last long doing full time work (DN 13-1 at 3). Plaintiff also points out the ALJ gave no weight to Dr. Buchanan's opinion that he would not hire Plaintiff (DN 13-1 at 3).

Plaintiff contends when Dr. Buchanan's sworn statement is read as a whole, and in context, it is clear that these limitations (i.e., Plaintiff's need to lie down and elevate her feet) are not mere possibilities, but are definite limitations (DN 13-1 at 3). Plaintiff explains that Dr. Buchanan stated Plaintiff would need to lie down to nap or rest if she felt the need to do so based on the fatigue she experiences (DN 13-1 at 4). Additionally, Dr. Buchanan indicated it would be "reasonable and appropriate" for Plaintiff to elevate her feet "intermittently" during the day to relieve her symptoms (DN 13-1 at 4). Plaintiff also contends the ALJ did not follow 20 C.F.R. § 404.1527 because she failed to explain how much weight she assigned to the remainder of Dr. Buchanan's opinion (DN 13-1 at 4). Plaintiff asserts the case should be remanded so that a complete determination can be made regarding the amount of weight afforded to Dr. Buchanan's opinion (DN 13-1 at 4).

Defendant argues substantial evidence in the record supports the ALJ's good reasons for refusing to give controlling or great weight to Dr. Buchanan's opinions (DN 16 at 4-8). Defendant asserts the ALJ also specified how much weight she gave to each limitation (Id.).

On March 6, 2013, Plaintiff's counsel recorded an oral sworn statement from Dr. Buchanan (Tr. 341-44).   Dr. Buchanan's specialty is endocrinology and he began treating Plaintiff in April 2009 (Tr. 341).   Dr. Buchanan diagnosed Plaintiff with hypothyroidism and fibromyalgia based on her history and laboratory testing (Tr. 342).   Dr. Buchanan prescribed thyroid replacement medication for Plaintiff's hypothyroidism; Lotrec for her blood pressure; Tramadol for pain caused by the fibromyalgia; 300 mg of Gabapentin three times a day for nerve pain caused by her fibromyalgia; Effexor for her depression; and Spironolactone which is a diuretic (Tr. 341).

Dr. Buchanan indicated that Plaintiff had reported a lot of joint pain with her fibromyalgia (Tr. 342, 343).   Because Plaintiff reported fatigue throughout the day with her hypothyroidism, Dr. Buchanan believed it would be "reasonable and appropriate" for her to lie down and rest or nap on an as needed basis (Tr. 342-43).   Dr. Buchanan also commented "[b]ecause of her fatigue and pain, she is limited in her activities" (Tr. 342).   Additionally, Dr. Buchanan explained while intermittently elevating her feet will not cure Plaintiff's neuropathy it will give her temporary symptomatic relief from the numbness in her legs and feet (Tr. 343).

Notably, Plaintiff's counsel asked, "[b]ased on her physical conditions, are you aware of any limitations on how long she can sit at one time?" (Tr. 342).   Dr. Buchanan responded, "[s]he told me at various times that she couldn't <u>stand</u> or <u>sit</u> for more than an hour or an hour and a half. She said she has a hard time doing her housework because she can't stand" (Tr. 342) (emphasis in original text).   Additionally, Dr. Buchanan opined that Plaintiff could probably walk "half an hour or less" and would have a hard time with stooping, crawling, or bending (Tr. 342-43).   When asked if he would recommend full-time employment, Dr. Buchanan responded "I don't think I would want to hire her" (Tr. 343).   Additionally, Dr. Buchanan testified if Plaintiff attempted full

9

time work she would be absent a little less than half of the first month because she is tired all the time, she hurts, and she is on quite a bit of medication that would impair her performance (Tr. 343). Dr. Buchanan also indicated the side effects from her medicine include fatigue, sleepiness, shortness of breath, swelling in her hands and feet, and recurrent headaches (Tr. 343-44).   Dr. Buchanan observed that Plaintiff's limitations have slowly gotten worse since he began treating her in 2009 (Tr. 344).

The ALJ considered Dr. Buchanan's statement but found "his statements regarding [Plaintiff's] need to lie down, rest, or nap during the day as well as his statements regarding [Plaintiff's] ability to sit and stand to be vague and primarily based on [Plaintiff's] reported history and subjective complaints" (Tr. 30).   The ALJ also observed that Dr. Buchanan opined Plaintiff "would be limited in her ability to stoop, crawl, and bend, but he assessed no specific restrictions" (Tr. 30).   Additionally, the ALJ noted that Dr. Buchanan indicated "it was *possible* that she may need to elevate her feet throughout a workday, but he did not state it was medically necessary or a requirement of her treatment" (Tr. 30).   Further, "in light of the minimal positive clinical findings" in the doctor's own treatment notes, the ALJ "found not credible or persuasive" Dr. Buchanan's opinion "that if employed [Plaintiff] would miss at least half of the first month" (Tr. 30).   For the same reason, the ALJ gave little to no weight to Dr. Buchanan's opinion that Plaintiff "could not last long doing full-time employment" (Tr. 30).   Moreover, the ALJ indicated she found no objective medical evidence in Dr. Buchanan's treatment notes that would preclude Plaintiff from performing the range of work identified in the residual functional capacity finding (Tr. 30).   The ALJ also noted that Dr. Buchanan's own treatment notes did not set forth any statement or work-related limitations precluding Plaintiff from all work activity (Tr. 30). Therefore, the ALJ explained, Dr. Buchanan's opinion was not given great or controlling weight

10

(Tr. 30).   Additionally, the ALJ observed that Dr. Buchanan's statement, indicating he would not hire Plaintiff, was not a medical opinion and was given no weight (Tr. 30).

In sum, the ALJ explained she did not giving controlling weight to Dr. Buchanan's medical opinion because the limitations were based on Plaintiff's statements, not medically acceptable clinical and laboratory diagnostic techniques.   Additionally, the ALJ explained the limitations in Dr. Buchanan's medical opinion were not entitled to controlling weight because they were inconsistent with the doctor's own treatment notes which constituted other substantial evidence in the record.   Substantial evidence in the record supports these "good reasons" for not according controlling weight to the limitations in Dr. Buchanan's medical opinion.   *See* Gayheart, 710 F.3d at 376-77 (20 C.F.R. § 404.1527(c)(2) requires "good reasons" for not giving controlling weight to a treating source's opinion).   Moreover, the ALJ provided "good reasons" supported by substantial evidence in the record for giving little to no weight to the limitations in Dr. Buchanan's medical opinion.   Finally, Dr. Buchanan's comment indicating he would not hire Plaintiff for full time work was a vocational opinion that may be dispositive of the issue of disability.   Social Security Ruling 96-5p, 1996 WL 374183, at *2-5 (July 2, 1996).   While such opinions by medical sources must not be disregarded, they are not entitled to controlling weight or given special significance.   Id. at *5.   Thus, the ALJ's decision to give no weight to Dr. Buchanan's vocational opinion comports with applicable law.

2

The undersigned will now address Plaintiff's claim there was not substantial evidence to support the ALJ's failure to give "controlling" and/or "great" weight to the opinion that Dr. Steven Frachtman expressed following his consultative examination of Plaintiff (DN 13-1 at 4-5, Tr. 307-312).   Plaintiff points out that Dr. Frachtman opined she would have moderate to severe

11

limitations with work related activities (DN 13-1 at 5).   Plaintiff asserts this opinion was consistent with Dr. Buchanan's opinion and the medical evidence in the record (DN 13-1 at 5). Plaintiff asserts the ALJ relied on conclusory statements and failed to fully follow 20 C.F.R. § 404.1527 because she did not indicate how much weight was being accorded to the opinion after indicating it would not be afforded controlling or great weight (DN 13-1 at 5).   Defendant asserts to the extent the ALJ did not state specifically how much weight she gave to Dr. Frachtman's opinion, any error was harmless because the ALJ made it clear she did not give the opinion great weight and she did not adopt the conclusions (DN 16 at 8-9).

On May 19, 2012, Dr. Frachtman conducted a consultative examination (Tr. 308-310). During the consultative examination, Plaintiff reported being diagnosed with fibromyalgia and neuropathy seven years earlier (Tr. 308).   Plaintiff claimed average pain rates of 10/10 which mildly improved to 8/10 with pain medication (Tr. 308).   Plaintiff indicated she can lift 20 pounds at once, lift 10 pounds repetitively, walk for about 30 minutes without having to sit, stand for 30 minutes without having to sit, and sit for 30 minutes without having to move (Tr. 309).

Dr. Frachtman's examination revealed a normal range of motion, 5/5 strength, normal muscle tone, normal grip strength, normal fine motor, and normal gait (Tr. 310, 311-12).   The examination did reveal decreased sensation to light touch in Plaintiff's lower extremities and 2+ reflexes bilaterally (Tr. 310).   Notably, Dr. Frachtman indicated "[g]iven the patient's history, physical exam, and available ancillary data, I find the patient to have moderate limitations in ADLs and moderate to possibly severe limitations in work-related activities" (Tr. 310).

In pertinent part the ALJ's decision reads:

> As for opinion evidence, a consultative examiner [Dr. Frachtman]
> assessed the claimant with moderate to possibly severe limitations
> in   work-related   activities,   but   provided   no   specific

12

> function-by-function work limitations.   In addition, positive clinical and objective findings as noted in the consultative examination report do not support severe limitations.   Therefore, the consultative examiner's opinion cannot be afforded great weight.

(Tr. 29-30).

Under the regulations, Dr. Fractman is considered a nontreating source because he examined Plaintiff but did not have an ongoing treatment relationship.   20 C.F.R. § 404.1502. An opinion from a nontreating source, like Dr. Fractman, is "never assessed for 'controlling weight.'"   Gayheart, 710 F.3d at 376.   Thus, Plaintiff is mistaken to the extent she suggests that Dr. Fractman's opinion may have been entitled to controlling weight.   Additionally, the ALJ appropriately weighed Dr. Frachtman's opinion based on factors such as the examining relationship, consistency, and supportability (Tr. 29-30).   Id. (citing 20 C.F.R.   404.1527(c)). Moreover, substantial evidence in the record supports the ALJ's finding that Dr. Frachtman's opinion cannot be afforded great weight (Tr. 29-30).

Certainly, the ALJ should have explained she accorded little or no weight to Dr. Frachtman's opinion.   However, the error is harmless because the decision implicitly provides sufficient reasons for the reader to reach that conclusion.

3

The undersigned will now address Plaintiff's claim there was not substantial evidence to support the ALJ's decision to adopt the postural and environmental limitations expressed by the non-examining state agency physician, Dr. Saranga (DN 13-1 at 5-6).   Plaintiff points out that Dr. Saranga opined she could perform up to medium work with certain postural and environmental limitations (DN 13-1 at 5).   Plaintiff explains the opinion is based on review of an incomplete record and no examination (DN 13-1 at 5-6).   Plaintiff argues this opinion does not come close to

being substantial evidence in the record and it is absolutely unreasonable to conclude she could

perform "even sedentary work, let alone heavy work" (DN 13-1 at 6).   Additionally, Plaintiff

asserts the ALJ failed to indicate how much weight she accorded to the remaining part of the

opinion (DN 13-1 at 6).   Defendant asserts that substantial evidence in the record supports the

ALJ's findings (DN 16 at 9-11).

By way of background, Plaintiff's application was denied initially on July 25, 2012 (Tr.

19).   On September 7, 2012, in connection with Plaintiff's request for reconsideration, Dr.

Saranga reviewed the administrative record and expressed exertional, postural, and environmental

limitations regarding Plaintiff (Tr. 96-98).   Essentially, Dr. Saranga recommended Plaintiff

perform less than a full range of medium work because of postural and environmental limitations

(Tr. 96-98).   With regard to postural limitations, Dr. Saranga indicated Plaintiff could frequently

climb ramps/stairs, stoop, kneel, crouch, and crawl; but she could only occasionally climb ladders,

ropes, and scaffolds (Tr. 97).   As to environmental limitations, Dr. Saranga expressed no

limitations regarding extreme temperatures, wetness, humidity, noise, vibration, and hazards

(machinery, heights, etc.); but recommended Plaintiff avoid concentrated exposure to fumes,

odors, dusts, gases, poor ventilation, etc. (Tr. 98).

In relevant part the ALJ's decision reads:

> State agency program physician [Dr. Saranga] determined that the
> claimant could do a range of medium exertional work activity with
> postural and environmental limitations.   The undersigned finds that
> the State agency program physician's opinion is credible and
> reasonable base on the medical evidence of record at that time.
> However, based on new and material evidence received at the
> hearing level, the undersigned finds the claimant limited to light
> work, which is most consistent with her ongoing daily activities.
> However, the undersigned adopts the postural and environmental

> limitations as set forth by the State agency program physician with no evidence to support any greater limitations.  (Exhibit 4A and 4F)

(Tr. 30).

Clearly, the ALJ understood that Dr. Saranga rendered his opinions before the receipt of new and material evidence regarding Plaintiff's exertional limitations.   Further, the ALJ assigned weight to Dr. Saranga's opinions based on factors such as the lack of an examining relationship, consistency, and supportability.   Gayheart, 710 F.3d at 376 (citing 20 C.F.R.   404.1527(c)).   In essence, the ALJ adopted Dr. Saranga's postural and environmental opinions because subsequently received evidence did not indicate a change in Plaintiff's postural and environmental limitations.   By contrast, the ALJ provided a good reason for the reader to conclude no weight was accorded to Dr. Saranga's opinion that Plaintiff could perform a range of medium work activity.   Specifically, the ALJ explained that subsequently received evidence showed Plaintiff was limited to light work.   The ALJ's findings regarding the weight accorded to Dr. Saranga's opinions are supported by substantial evidence in the record and comport with applicable law.

Consideration of the Combined Effect of Plaintiff's Impairments

Next, Plaintiff argues there was not substantial evidence to support the ALJ's failure to determine that the combined effects of her impairments rendered her totally disabled (DN 13-1 at 6-7).   Plaintiff asserts she was clearly in intense pain and unable to do any type of work from August 2, 2011 through well beyond her date last insured (DN 13-1 at 6-7).   Plaintiff believes the ALJ failed to recognize and consider substantial evidence in the record showing her severe impairments (hypothyroidism, fibromyalgia, peripheral neuropathy, and depression) in combination rendered her disabled (DN 13-1 at 7).

15

Defendant asserts that the ALJ considered these severe impairments singly and in combination at step three and again in the residual functional capacity finding (DN 16 at 11-12). Defendant contends the decision as a whole shows the ALJ properly followed the five step sequential evaluation and ultimately concluded Plaintiff was not disabled (DN 16 at 12).

Certainly, the Administrative Law Judge is required to consider the combined effect of a claimant's impairments in determining whether the claimant is disabled.   20 C.F.R. § 404.1523. Discussing multiple impairments individually does not mean the Administrative Law Judge failed to consider the combined effect of those impairments where the Administrative Law Judge specifically referred to a "combination of impairments" in finding the claimant does not meet the listings.   Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1310 (6th Cir. 1990) (citing Gooch v. Sec'y of Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987)).

Here, the ALJ discussed Plaintiff's multiple impairments individually but, at the third step, she also specifically referred to a "combination of impairments" in finding Plaintiff does not meet the listings (Tr. 21-22, Finding Nos. 3, 4).   Moreover, the ALJ's residual functional capacity assessment indicates that she did consider the combined effect of Plaintiff's impairments at the fourth step (Tr. 23-30).   Therefore, the undersigned concludes Plaintiff's argument is without merit.

Whether the ALJ Improperly Speculated

Next, Plaintiff claims the ALJ erred in improperly speculating as to medical conclusions (DN 13-1 at 7-8).   In support of this claim, Plaintiff has cited case law indicating Administrative Law Judges should not draw speculative inferences and make their own independent medical findings from raw medical data (DN 13-1 at 7).   However, in the argument that follows, Plaintiff does not identify speculative inferences the ALJ purportedly made from the medical evidence (DN

16

13-1 at 7-8).   Instead, Plaintiff identifies what she believes were improper speculative inferences the ALJ made with regard her subjective statements about the severity of her pain and other limitations.

To the extent that Plaintiff is accusing the ALJ of improperly speculating about medical conclusions, the Court will deem the argument waived because she has not identified the medical conclusions she is referring to and provided an explanation why she believes they were the product of improper speculation.[1]   The Court will, however, address Plaintiff's assertions about improper speculative inferences regarding the credibility of her subjective statements because Plaintiff has identified specific instances in the record and explained why she believes the ALJ made improper speculative inferences (Tr. 13-1 at 7-8).

Plaintiff asserts "the ALJ of engaged in speculation by alluding to the fact that Ms. Bourland was not limited by her lack of finances or health insurance as testified to" (DN 13-1 at 7). Plaintiff contends that Social Security Ruling 82-59 "is very clear in that lack of treatment cannot be held against a claimant in circumstances like Ms. Bourland's" (DN 13-1 at 7).   Plaintiff points out that the ALJ did not mention this ruling, instead she "speculated this was not true.  This speculation directly impacted Ms. Bourland's credibility" (DN 13-1 at 7).

In the context of assessing the credibility of Plaintiff's allegations of disabling pain and limitations caused by her physical impairments, the ALJ commented as follows:

> The infrequency in which the claimant has sought medical treatment also casts doubt on the degree of pain she experiences, and suggests pain may not be as severe as alleged.   Despite the claimant's continued complaints of pain, she has not received any further

---

1 It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."   United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); see also Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived.").

> treatment other than pain medication.   The undersigned also notes that abnormal findings on clinical examinations have generally been limited to tenderness with no indication of any severe or disabling neurological findings.   Furthermore, there are no indications from a provider that cost or insurance was a factor limiting medication usage or treatment although she alleges she cannot afford to see her doctor but twice a year.   There is nothing in the treating record indicating more frequent or aggressive treatment is warranted.

(Tr. 27).   Contrary to Plaintiff's assertion, the ALJ did not engage in impermissible speculation. Rather, the ALJ appropriately assessed the credibility of Plaintiff's subjective statements about the degree of pain she experiences.   20 C.F.R. § 404.1529; Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").   In accordance with SSR 96-7p, the ALJ considered Plaintiff's explanation for not seeking more frequent medical treatment but did not find anything in the treatment records that substantiated her claim.   1996 WL 374186, at *7. Moreover, the ALJ recognized that the treating records themselves did not indicate more frequent or aggressive treatment was warranted in Plaintiff's case.   Id. at *6-7.   Clearly, the ALJ's findings are supported by substantial evidence in the record and comport with applicable law.   20 C.F.R. § 404.1529; Social Security Ruling 96-7p.   Additionally, contrary to Plaintiff's assertion, SSR 82-59 does not apply here because Plaintiff is not accused of failing to follow prescribed treatment.   1982 WL 31384, at *1-4 (Jan. 1, 1982) (justifiable cause for failure to follow prescribed treatment includes a willingness to accept but an inability to afford the prescribed treatment and free community resources are not available).

Next, Plaintiff accuses the ALJ of wrongful speculation because the ALJ indicated since Plaintiff completed her application online without any apparent difficulty, her allegation that she couldn't do typing work was not supported (DN 13-1 at 7-8, citing Tr. 27).   Plaintiff contends

18

there is nothing in the record indicating she completed her application without taking breaks, needing assistance, or that her hands weren't sore (DN 13-1 at 7-8).

The record shows on April 22, 2012, Plaintiff completed in her own handwriting a questionnaire entitled "FUNCTION REPORT – ADULT" (Tr. 233-241, Exhibit 7E).   In the "REMARKS" section of the questionnaire, Plaintiff reported "I had to quit work because I couldn't concentrate, type on the keyboard accurately anymore because my fingers are numb" (Tr. 241).

On August 14, 2012, Plaintiff completed on the internet a questionnaire entitled "DISABILITY REPORT – APPEAL – Form SSA-3441" (Tr. 242-246, Exhibit 8E).   On September 26, 2012, Molly Mills [2] completed on the internet a questionnaire entitled "DISABILITY REPORT – APPEAL – Form SSA-3441" (Tr. 264-268, Exhibit 12E).

During the Administrative Hearing, Plaintiff testified about the secretarial work she performed at Morton's Gap Christian Church (Tr. 44-48).   Plaintiff testified that she quit this job because her pain medication interfered with her ability to concentrate and her error rate just kept getting worse and worse (Tr. 44-48).   Notably, Plaintiff did not testify she had to quit work because of an inability to type on a keyboard (Tr. 44-66).   Additionally, Plaintiff did not testify that someone else typed or helped her type the information on the August 14, 2012 questionnaire (Tr. 44-66).

In relevant part the ALJ's decision reads as follows:

> . . . She can shop by phone and on the computer.   The undersigned notes that forms were completed by the claimant on the Internet with no indication that she required assistance in typing lengthy and

---

2  The address provided by Molly Mills suggests that she worked for Plaintiff's counsel (compare Tr. 14 with Tr. 268).

> detailed information (Exhibit 8E and 12E). Therefore, allegations that she had to quit working because she could not type on a keyboard are unsupported (Exhibit 7E).

(Tr. 27). Both internet questionnaires involved typing lengthy and detailed information. Certainly, the evidence in the record shows the ALJ erred in finding that Plaintiff performed the typing on the September 26, 2012 questionnaire. However, the ALJ's error is harmless because substantial evidence in the record supports the ALJ's finding that Plaintiff was able to type, without assistance, the lengthy and detailed information in the August 14, 2012 questionnaire (Exhibit 8E). Thus, the ALJ did not engage in wrongful speculation when she concluded there was no evidence in the record supporting Plaintiff's allegation that she had to quit working because she could not type on a keyboard.

Assessment of Plaintiff's Credibility

Plaintiff argues the ALJ erred in failing to accept her testimony as fully credible and in failing to state sufficient reasons for doing so (DN 13-1 at 8-9). In support of her position, Plaintiff again accuses the ALJ of improperly speculating about her financial ability to treat and complete online questionnaires (DN 13-1 at 8). Additionally, Plaintiff contends when the ALJ discussed her ability to engage in some daily activities, the ALJ gave greater attention to a third-party report than to Plaintiff's own testimony (DN 13-1 at 8-9, citing Tr. 29). Finally, Plaintiff contends that her testimony regarding limitations is corroborated by the medical evidence in the record (DN 13-1 at 9).

In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. § 404.1529; Social Security Ruling 96-7p. A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical

signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged.  20 C.F.R. §§ 404.1529(a), 416.929(a).   In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in <u>Duncan v. Sec'y of Health & Human Servs.</u>, 801 F.2d 847, 853 (6th Cir. 1986), applies.

First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."   <u>Id.</u>

Here, the ALJ found there is objective medical evidence demonstrating Plaintiff has hypothyroidism, fibromyalgia, peripheral neuropathy, and depression (Tr. 21-26).   Next, the ALJ determined the objectively established medical conditions are not of such severity that they can reasonably be expected to produce the degree of pain and limitation claimed by Plaintiff (Tr. 26-29).   Since Plaintiff's claims of pain and other symptoms suggested impairments of greater severity than can be shown by the objective medical evidence, the ALJ appropriately considered other information and factors which may be relevant to the degree of pain alleged (Tr. 26-29).   20 C.F.R. § 404.1529(c)(3); Social Security Ruling 96-7p.

For example, the ALJ considered Plaintiff's level of daily activity as a factor in determining the extent to which pain is of disabling severity (Tr. 26-29).   20 C.F.R. § 404.1529(c)(3)(i); <u>Bogle v. Sullivan</u>, 998 F.2d 342, 348 (6th Cir. 1993); <u>Blacha v. Sec'y of Health & Human Servs.</u>, 927 F.2d 228, 231 (6th Cir. 1990).   Contrary to Plaintiff's assertion, the ALJ discussed Plaintiff's reported limitations, her testimony, her husband's testimony, and the third-party report her

21

husband submitted (Tr. 26-29).   Further, the ALJ provided good reasons for the weight she accorded to the evidence she considered from each of those sources (Tr. 26-29).

Additionally, the ALJ considered the frequency that Plaintiff sought treatment for the allegedly disabling conditions in assessing her subjective complaints (Tr. 26-29).   20 C.F.R. §§ 404.1529(c)(3)(v) and 416.929(c)(3)(v).   The ALJ assessed the medication used to alleviate the alleged pain and other symptoms as well as Plaintiff's complaints about side effects (Tr. 26-29).   20 C.F.R. § 404.1529(c)(3)(iv).   The ALJ also considered whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between Plaintiff's statements and the rest of the evidence in the record.   20 C.F.R. § 404.1529(c)(4).   The ALJ found Plaintiff's allegations of disabling pain and limitations were inconsistent with the infrequency of her follow-up office visits with Dr. Buchanan and the conservative nature of the treatment he rendered.   Further, the ALJ found no evidence in the medical record corroborating Plaintiff's claim that cost or a lack of insurance was a factor limiting medication usage or treatment. Additionally, the ALJ did not find any evidence in the record that substantiated Plaintiff's claim that she had to quit work because she could not type on a keyboard.   Each of these findings are supported by substantial evidence in the record and comport with applicable law.

After considering the medical record, Plaintiff's statements, her own testimony, statements from her husband, and testimony from her husband, the ALJ found that Plaintiff does not suffer pain and other limitations to the extent she claimed.   In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of Plaintiff's credibility.   Since tolerance of pain and other symptoms is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the claimant, the conclusion of the Administrative Law Judge, who has the

22

opportunity to observe the claimant's demeanor, "should not be discharged lightly."   <u>Houston v. Sec'y of Health & Human Servs.</u>, 736 F.2d 365, 367 (6th Cir. 1984) (citing <u>Beavers v. Sec'y of Health, Educ. & Welfare</u>, 577 F.2d 383 (6th Cir. 1978)).   The undersigned concludes that the ALJ's findings regarding Plaintiff's credibility are supported by substantial evidence and fully comport with applicable law.

Finally, for the reasons set forth above, the ALJ discounted the medical opinions in the record that Plaintiff cites in support of her claim of disabling pain and other limitations.   Thus, contrary to Plaintiff's contention, her claims of disabling pain and other limitations are not supported by substantial evidence in the record.   For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**. This is a final and appealable Order and there is no just cause for delay.

Copies:        Counsel

23